IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JOSE LORENZO SANTANA,     )
                       )
           Petitioner,    )     Case No. CV03-398-S-LMB
                       )
vs.                    )     **MEMORANDUM DECISION**
                     )     **AND ORDER**
ISCI–WARDEN, BLADES,     )
                     )
          Respondent.   )
_____ )

      Pending before the Court in this habeas corpus matter is Respondent's Motion for

Summary Judgment (Docket No. 20).  The parties have consented to the jurisdiction of a

United States Magistrate Judge to enter final judgment, in accordance with 28 U.S.C. §

636(c) and Fed. R. Civ. P. 73.  (Docket Nos. 8 & 10.)

      The issues before the Court have been adequately briefed, and the Court has

determined that oral argument is unnecessary.  D. Idaho L. Civ. R. 7.1.  Having

considered the pleadings, the parties' briefing, and the record in this matter, the Court

enters the following Memorandum Decision and Order.

## I.

## BACKGROUND

      After a jury trial in state district court, Petitioner Jose Santana was convicted of the

first degree murder of Jose Hernandez, who was shot to death during a brief roadside

encounter in Nampa, Idaho.  *State's Lodging A-1*, pp.196-98.  The state court sentenced

Santana to life in prison, with 25 years fixed.  *State's Lodging A-1*, pp. 218-19.  The facts

that resulted in Santana's conviction and sentence are as follows.

On October 16, 1994, Hernandez was riding as a passenger in a car driven by Jose

Caloca when a white van pulled up behind the car and flashed its headlights.  *State's

Lodging A-5*, pp. 498-99.  Caloca stopped the car, and the driver of the white van

approached.  Caloca recognized the driver as Santana, who told him that he was looking

for Caloca's uncle.  *State's Lodging A-5*, pp. 500-01.

Hernandez also recognized Santana, and they engaged in a friendly conversation.

Eventually, Santana asked Hernandez to get out of the car, and Hernandez followed him

to the rear of the vehicle.  *State's Lodging A-5*, pp. 505-07.  Through his rear view mirror,

Caloca could see the men conversing.  Caloca claimed that the conversation started in a

friendly manner but that it escalated into an argument, at which point Caloca watched as

Santana went to the passenger side door of the white van and pulled out what looked like

a rifle.  Within seconds Caloca heard a gunshot, followed immediately by a cry from

Hernandez.  *State's Lodging A-5*, pp. 508-09.  Frightened, Caloca sped away in his car; he

looked back and noticed someone get into the white van and drive away.  *State's Lodging

A-5*, p. 511.

Michael Krause, who was watching television in his home, heard a loud gunshot.

As he went to his back door to investigate, he saw a white van driving down the street.

**Memorandum Decision and Order - 2**

*State's Lodging A-5*, pp. 651-52.  Krause stepped outside and almost bumped into a Hispanic man moving quickly through his yard.  He noted that the man looked "fearful" and was holding something close to his body.  *State's Lodging A-5*, pp. 650-51.  Krause went back inside his house.  *State's Lodging A-5*, p. 651.

When police and medical personnel responded to the scene of the shooting, Hernandez was still alive, but he told the responders that he had been shot in the stomach and that he was dying.  *State's Lodging A-5*, p. 471.  Hernandez was asked his name, to which he replied, "Santana."  *State's Lodging A-5*, pp. 459-60, 473.  A police officer also asked him who shot him, to which he again replied, "Santana."  *State's Lodging A-5*, p. 473.  Hernandez later died from blood loss.  *State's Lodging A-5*, p. 591.

The State apprehended Santana, who had fled to Las Vegas, and charged him with first degree murder and use of a deadly weapon.  *State's Lodging A-1*, pp. 28-31.

At trial, Santana admitted that he was at the scene but claimed that a passenger in his van shot Hernandez and then fled on foot.  *State's Lodging A-5*, pp. 679-80.  To support the theory that another individual was present, Santana's counsel called Michael Krause to testify.  Krause testified that he saw the white van drive away and that he then saw a Hispanic man just outside of his back door holding something long and rigid close to his body.  *State's Lodging A-5*, pp. 653-54.  He also testified that Santana "appears to be" the man who he saw fleeing from the scene.  *State's Lodging A-5*, pp. 654, 660.

On June 21, 1996, the jury found Santana guilty as charged, and the state district court later sentenced him to 25 years to life in prison.  The Idaho Court of Appeals

**Memorandum Decision and Order - 3**

affirmed Santana's conviction and sentence, and the Idaho Supreme Court declined to review the case.  *State's Lodgings B-11 & B-14*.

Santana filed a Petition for Post-Conviction Relief in the state district court, raising numerous claims of ineffective assistance of counsel.  *State's Lodging C-1*, pp.140-45, 158-59.  The district court held an evidentiary hearing, thereafter denying all of Santana's claims.  *State's Lodging C-2*, pp.166, 171.  Santana appealed the lower court's ruling, but limited his claims on appeal to whether trial counsel failed to adequately impeach eyewitnesses Caloca and Krause.  *State's Lodging D-1*, pp.29-31.  The Idaho Court of Appeals affirmed, and the Idaho Supreme Court denied Santana's request for review. *State's Lodging D-4*, pp.5-6; *State's Lodging D-7*.

On September 12, 2003, Santana filed the federal Petition for Writ of Habeas Corpus currently pending before this Court.  The Court subsequently dismissed several claims because Santana failed to present those claims in state court and the time to do so had expired.  *See Order dated September 8, 2004*, p. 11.  The following claims have survived summary dismissal:

> Claim II (b): The trial court violated Santana's right to due process of law when it excluded the victim's drug test from the evidence at trial.
>
> Claim III (a): Santana's Sixth Amendment right to an impartial jury was infringed when a juror was removed for implied bias.
>
> Claim III (c): Santana was deprived of his Sixth Amendment right to the effective assistance of counsel because:

* * *

**Memorandum Decision and Order - 4**

(4) counsel failed to cross-examine and impeach state's witness Jose
Caloca effectively;
(5) counsel failed to impeach witness Michael Krause effectively;
(6) counsel did not present the testimony of Sheree Krause, who would
have further impeached Mr. Krause.

Claim III (d): Santana was twice placed in jeopardy, in violation of the Fifth
Amendment, when the trial court removed a sitting juror and chose an alternate
to replace her.

Respondent has now filed an Answer to the Petition and a Motion for Summary
Judgment, contending that Santana did not fairly present Claims II (b), III (a), and III (d)
to the Idaho Supreme Court and, consequently, that the claims are procedurally defaulted
and must be dismissed.  Respondent further alleges that he is entitled to judgment as a
matter of law on the allegations of ineffective assistance of counsel contained in Claim III
(c)(4)-(6).  Santana has filed a Response, and these matters are now ripe for adjudication.

## II.

## PROCEDURAL DEFAULT

The State first contends that Claims II (b), III (a), and III (d) are procedurally
defaulted.   For the reasons that follow, the Court agrees that Claims II (b) and III (d)
were not raised as federal claims in the Idaho Supreme Court and are now procedurally
defaulted.  The Court finds that Claim III (a) was presented, in part, as a federal claim,
but the Court is persuaded by the State's alternative argument that it must be dismissed
because Santana is impermissibly seeking a new rule of constitutional law on habeas
review.

**Memorandum Decision and Order - 5**

A.    Standard of Law

Before a federal court can grant habeas relief on a claim, a petitioner must first

exhaust his remedies available in state court.  28 U.S.C. § 2254(b)(1)(A).  To exhaust a

habeas claim properly, a habeas petitioner must invoke one complete round of the state's

established appellate review process, giving the state courts a full and fair opportunity to

correct the alleged constitutional error at each level of appellate review.  *Baldwin v.

Reese*, 541 U.S. 27 (2004).  "[O]rdinarily a state prisoner does not 'fairly present' a claim

to a state court if that court must read beyond a petition or a brief (or a similar document)

that does not alert it to the presence of a federal claim in order to find material, such as a

lower court opinion in the case, that does so."  *Id*. at 32.

The petitioner must also squarely present the federal nature of the claim to the state

courts, and the mere similarity between a state law claim and a federal claim does not

constitute fair presentation of the federal claim.  *See Duncan v. Henry*, 513 U.S. 364, 365-

66 (1995).  General references in state court to broad constitutional principles, such as

due process, equal protection, and the right to a fair trial, are likewise insufficient.  *See

Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999).

If a petitioner has not fairly presented a habeas claim, and it is now too late to do

so, the claim is considered to be procedurally defaulted.  *Coleman v. Thompson*, 501 U.S.

722, 735 n.1 (1991).  A procedurally defaulted claim cannot be heard in federal court

unless a petitioner shows valid cause for the default and actual prejudice from the alleged

**Memorandum Decision and Order - 6**

constitutional violation, or the petitioner demonstrates that failure to consider the claim will result in a miscarriage of justice.  *Coleman*, 501 U.S. at  750.

      B.    <u>Discussion</u>

            1.    <u>Claim II (b)</u>

In this claim, Santana alleges that the trial court violated his Fourteenth Amendment right to due process of law when it excluded the results of the victim's drug test.  Santana contends that because the results showed that the victim had cocaine and methamphetamine in his system on the night he died, the victim's dying declaration that "Santana" shot him would have been shown to be unreliable.  Respondent counters that although Santana raised an issue regarding the exclusion of the drug test results in his Petition for Review before the Idaho Supreme Court, he did not frame that issue as one arising under federal law.  The Court has reviewed the record and is constrained to agree with Respondent.

The Idaho Court of Appeals determined that the exclusion of the drug test was error under state evidentiary rules, but that it was harmless in light of the other evidence before the jury.  *State's Lodging B-11*, p. 9.  In his briefing before the Idaho Supreme Court, Santana essentially contended that the Idaho Court of Appeals was incorrect in its harmless error analysis.  *State's Lodging B-13*, pp. 10-15.  In presenting the issue to the higher court, Santana did not rely upon the United States Constitution, federal case law interpreting a constitutional rule, or even state court case law that unambiguously analyzed a federal constitutional issue.  Rather, Santana relied entirely upon state law and

**Memorandum Decision and Order - 7**

secondary sources, and he expressly requested review because "there is very little law in Idaho regarding admissibility, or impeachment, of dying declarations in a criminal case, because this case involves a conviction for first degree murder, and because unique aspects of the case suggest that the exclusion of the evidence was not harmless." *See State's Lodging B-13*, p. 10.

The Court notes that Santana's brief before the Idaho Supreme Court included one reference to his "right to a fair trial," *State's Lodging B-13*, p. 15, but such an oblique remark, without more, is insufficient to satisfy the requirement of fair presentation of a federal constitutional issue. *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). Nor did Santana's passing reference to the United States Constitution in his opening brief before the Idaho Court of Appeals, *see State's Lodging B-1*, p. 21, substitute for his failure to explicitly raise a federal issue before the Idaho Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (petitioner must re-raise the federal claim in a petition for discretionary review, if one is available); *see also Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (holding that an appellate court does not have the duty to read the briefing before a lower court to determine whether a federal claim was being raised). Accordingly, the Court concludes that Claim II (b) was not fairly presented and it is now procedurally defaulted.

### 2.   Claim III (a)

In this claim, Santana alleges that his Sixth Amendment right to an impartial jury was violated when the trial court improperly excluded a sitting juror for implied bias.

**Memorandum Decision and Order - 8**

The Idaho Court of Appeals addressed this issue as one that implicated the federal constitution, and although it agreed that the trial court had erred in dismissing the juror, it found that Santana had not shown that his due process rights were violated because he had not alleged that the jurors who ultimately sat were biased.  *State's Lodging B-11*, p. 5. In reaching this conclusion, the Court of Appeals relied primarily on *Ross v. Oklahoma*, 487 U.S. 81 (1988), which held that to prove a Sixth Amendment violation a defendant must show that the jury was biased.

Respondent contends that Santana failed to re-raise the claim as a federal constitutional matter in his Petition for Review before the Idaho Supreme Court.  This Court disagrees.  Although there is no doubt that Santana relied primarily upon state law, he also discussed *Ross* and *Gray v. Mississippi*, 481 U.S. 648 (1987), how those cases addressed "the constitutional right to an impartial jury."  *State's Lodging B-13*, p. 8.

In *Gray*, a case that preceded *Ross*, the Supreme Court held that the exclusion of a juror in a capital case who expressed general reservations to capital punishment, but who could have followed the court's instructions and voted for the death penalty, is reversible error if the composition of the jury as whole could have been affected by the trial court's error.  481 U.S. at 665.  While Santana's brief in the Idaho Supreme Court was far from a model of clarity, it appears that he argued that the rule from *Gray* applied to his case, instead of the rule from *Ross*:

> Ross distinguished, but did not overrule Gray.  Gray was a case where, after the State used all of its preemptory [sic] strikes, the trial court excused a juror for cause "in an apparent attempt to correct earlier rulings."

**Memorandum Decision and Order - 9**

> 101 L.Ed.2d at 89.  There being no proper basis for a "for cause" excusal, the Supreme Court held it to be reversible error.  *That holding is still good law*.  <u>Ross</u> and <u>Gray</u> both discuss the notion of the likelihood that if the Court had not erroneously excused a qualified juror or refused to strike a [sic] unqualified juror, whether a party would have used a preemptory [sic] strike to remove the juror.  In Santana's case, all preempts [sic] had already been used.  This suggests that *the Court's error had a definite and obvious effect on changing the jury panel, which is reversible error*.

*State's Lodging B-13*, p.8 (emphasis added).

Thus, this Court concludes that, in addition to his state law claim, Santana relied upon *Gray* to raise a Sixth Amendment issue before the Idaho Supreme Court.  The Court has liberally construed the pleadings in this matter as raising the same claim here.

The Court's conclusion that Santana presented a federal issue does not end the inquiry, however.  *Gray* is limited to capital cases in which a juror is improperly struck based upon his or her general opposition to the death penalty.  *See Gray*, 481 U.S. at 657-59; *see also Ross*, 487 U.S. 87-88 (noting that *Gray* should be limited to its facts).  To find in Santana's favor, this Court would be required to extend *Gray* to a case in which a death sentence was not imposed and to a situation in which the juror was struck for reasons other than her opposition to the death penalty, which would create a new rule of constitutional law.  A federal court cannot make a new constitutional rule retroactive on collateral review, unless the rule "places certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe," or is a "watershed" rule of procedure that increases the accuracy of criminal proceedings. *Teague v. Lane*, 489 U.S. 288, 307 (1989); *Caspari v. Bolen*, 510 U.S. 383 (1994).

**Memorandum Decision and Order - 10**

Santana has not argued, and this Court does not find, that extending the *Gray* rule to his case would fit either of these exceptions, especially in light of *Ross*'s limitation of *Gray*'s sweep. *Id.*   As a result, *Teague* bars this Court from reaching the merits of Santana's federal claim.[1]

> 3.    Claim III (d)

In this claim, Santana contends that he was twice placed in jeopardy, in violation of the Fifth Amendment, when the trial court removed a sitting juror and chose an alternate to replace her.  While Santana presented a similar claim in the Idaho Court of Appeals, and that court addressed the merits, his briefing before the Idaho Supreme Court did not contain any mention of the Double Jeopardy Clause, nor did Santana otherwise

---

[1] The Court further notes that even if Santana had properly exhausted a claim that the Idaho Court of Appeals misapplied clearly established Sixth Amendment law, as interpreted by *Ross*, such a claim would fail on the merits.  The Idaho Court of Appeals correctly decided that to obtain relief on a Sixth Amendment claim based upon the right to an impartial jury, a defendant must show that the jurors that decided the case were actually biased, a burden which Santana was unable to carry.

**Memorandum Decision and Order - 11**

indicate that he wished to re-raise the issue in the higher state court. Therefore, he did not fairly present the federal claim. Because the time to do so has passed, Claim III (d) is procedurally barred.

      C.    <u>Cause and Prejudice or a Miscarriage of Justice</u>

Santana has not attempted to show cause to excuse the procedural default of Claims II (b) and III (d), and the Court has independently reviewed the record and found none. Santana instead contends that he is actually innocent of the crimes for which he was convicted, and that the failure to hear his claims will result in a miscarriage of justice. Santana asserts that another individual, who he claims was riding in his vehicle, shot and killed Jose Hernandez. *See* Docket No. 25, *Affidavit in Response*. As this Court has noted before, this is essentially the same evidence that Santana presented at trial, which the jury rejected, and Santana must come forward with convincing *new* evidence to support a claim of actual innocence. *See* Docket No. 16, p. 10. Accordingly, Santana's claim of miscarriage of justice fails.

**III.**

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Santana's remaining claim is that his trial attorneys were constitutionally ineffective because they failed to impeach witnesses Jose Caloca and Michael Krause with their prior statements. Respondent contends that Santana has not raised genuine issue of material fact, that these allegations fail on the merits, and that Respondent is entitled to judgment as a matter of law. For the reasons that follow, the Court agrees.

**Memorandum Decision and Order - 12**

A.    Standard of Law

Under Federal Rule of Civil Procedure 56 (c), summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure.  *See* Rule 11 of the Rules Governing Section 2254 Cases.  In general, summary judgment is not inconsistent with established habeas practice and procedure.  *See Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977).  However, the summary judgment standards must be applied in light of the substantive law governing habeas proceedings.

The Petition in this case is subject to the provisions of the Anti-terrorism and Effective Death Penalty Act (AEDPA), which was enacted in 1996.  The AEDPA established a deferential standard of review that a federal habeas court must apply to a state court's resolution of constitutional claims.  Under AEDPA, a federal court may grant habeas relief only if the state court's adjudication on the merits:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Memorandum Decision and Order - 13**

A state court's decision is "contrary to" federal law when the state court applied a rule of law different from the governing law set forth in United States Supreme Court precedent, or when it confronted a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrived at a different result. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

A state court's decision is an "unreasonable application" of federal law when the court was "unreasonable in applying the governing legal principle to the facts of the case." *Id*. at 413. A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision was incorrect or erroneous; instead, the decision must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

 B. Clearly Established Federal Law

A criminal defendant has a constitutional right to the assistance of counsel under the Sixth Amendment, made applicable to the states by the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335 (1963). In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set out the proper test to be applied to claims alleging constitutionally inadequate representation. To succeed on such a claim, a petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness and that (2) the petitioner was prejudiced thereby. *Id*. at 684. Prejudice under these circumstances means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694.

**Memorandum Decision and Order - 14**

A reasonable probability is one sufficient to undermine confidence in the outcome.  *Id*. at 694.

    C.    <u>Discussion</u>

    The last reasoned state court decision addressing Santana's allegations of ineffective assistance of counsel was issued by the Idaho Court of Appeals.  Although the Court of Appeals did not cite *Strickland*, it did cite state cases that had applied the *Strickland* test for claims of ineffective assistance of counsel.  *See State's Lodging D-4*, p. 3.  Because the Court of Appeals recognized and applied the correct federal legal standard, its decision was not "contrary to" clearly established federal law.

    The Court of Appeals ultimately held that even if trial counsel's representation fell below an objective standard of reasonableness in certain respects, a matter which the court did not decide, Santana had not shown that he was prejudiced.  *State's Lodging D-4*, pp. 5-6.  The Court concludes that this decision was not an unreasonable application of clearly established federal law.[2]

    1.    <u>Jose Caloca</u>

    Caloca, the driver of the car that Santana stopped, testified at trial that he was not paying much attention to Hernandez and Santana behind his car until they began to argue. Caloca also testified that he then saw Santana go to the passenger side of his van and pull

---

    [2] Santana does not appear to allege that the state court's decision was based upon an unreasonable determination of the facts in light of the evidence presented.  In any event, the Court does not find the state court's factual findings to be unreasonable based upon the record before it, and Santana is not entitled to relief under 28 U.S.C. § 2254(d)(2).

**Memorandum Decision and Order - 15**

out what looked like a rifle, after which he heard a loud gunshot.  *State's Lodging A-5*, pp. 508-09.

Santana claims that his trial attorneys were ineffective in failing to impeach Caloca's testimony with his pretrial statements that he did not hear any argument and that he had difficulty viewing the events because of the glare from the van's headlights.  *See Memorandum in Support of Petition*, pp. 8-16.  The Court agrees with the Idaho Court of Appeals, however, that Santana has not shown that he was prejudiced by any alleged shortcomings in the manner in which counsel cross-examined Caloca.  *See Strickland*, 466 U.S. at 688 (failure to satisfy one prong of the test for ineffectiveness will obviate the need to consider the other).

Regardless whether Caloca's attention was drawn to the rear of the vehicle by an argument, or for some other reason, his core version of the events remained consistent.  In particular, Caloca maintained that it was Santana who approached his car, that Santana and Hernandez went to the rear of the vehicle, that Caloca heard the men conversing behind his car, and that he eventually saw Santana retrieve what looked like a rifle, followed by the sound of a gunshot.  In light of the consistency of Caloca's version of the events, introducing the fact that he had previously said that he did not hear the men argue at the rear of the car would have been a minor point.

Caloca's pretrial statements that his vision was partially obscured by the van's headlights likewise would not have assisted Santana to any great degree.  In his trial testimony, Caloca admitted that he was not paying attention to Santana and Hernandez

**Memorandum Decision and Order - 16**

during part of their conversation and that he did not see that actual shooting, he only

*heard* a shot.  *State's Lodging A-5*, pp. 542-43.  As a consequence, Caloca's truncated

ability to view the events was already before the jury, and evidence that he had previously

admitted that the van's headlights increased this difficulty would have had only a

marginal effect on the credibility of this testimony.

Accordingly, the Court concludes that the Idaho Court of Appeals did not

unreasonably apply federal law in disposing of this claim.

>           2.     Michael Krause

At trial, Krause testified that he was in his home watching television when he

heard a gunshot.  He went to his back door, saw a white van driving away, and then

nearly collided with a Hispanic man who was carrying an object close to his chest.

Krause testified that the Hispanic man was wearing a medium length, darker colored

jacket, had medium length hair, and that the man "appears to be" Santana.  *State's*

*Lodging A-5*, pp. 654, 660.

Santana takes issue primarily with his counsel's handling of Krause's tentative

identification of him as the man that Krause saw outside of his back door.  Santana

contends that his trial counsel should have impeached Krause with his pretrial description

of the man, which included his claim that the man had no discernable facial hair--unlike

Santana at the time--and that he was wearing a flannel shirt over a light tee-shirt, instead

of a medium length jacket.  Santana additionally contends that Krause's wife should have

been called as a witness to reinforce the pretrial description.  Finally, Santana argues that

**Memorandum Decision and Order - 17**

his trial counsel erred in not introducing evidence that Krause had exhibited hostility to the defense before his trial testimony, ostensibly giving him a motive to testify favorably for the prosecution at trial.  *See Memorandum in Support of Petition*, pp. 17-25.

This Court again finds nothing objectively unreasonable with the Idaho Court of Appeals' decision that Santana has failed to show that he was prejudiced by any of these purported deficiencies.

In most respects, Krause's trial testimony was consistent with his pretrial statement: in both instances he asserted that the individual was of medium build and had medium length dark hair, and that he carried an object close to his body.  *State's Lodging C-2*, p. 65.  Santana focuses on Krause's description regarding facial hair and clothing, but these differences were not as great as Santana contends.  At trial, Krause testified that he "couldn't remember any specific facial hair . . . [t]here may have been some stubble but I can't remember exactly if there was any" and, on cross-examination, he testified that he could not "completely exclude" the possibility that the man had a mustache.  *State's Lodging A-5*, pp. 650, 663, 662.  Contrasting Krause's pretrial statement that he did not see any discernable facial hair with his trial testimony that he could not "completely exclude" the possibility is, at best, a minimal distinction.  And although Krause's description of the man's clothing went from a flannel shirt over a light tee-shirt to a darker colored, medium length jacket, Krause again minimized any distinction, testifying at trial that he focused primarily on the man's face and the fear in his eyes, rather than on his clothing.  *State's Lodging A-5*, p.650.  Given the general consistency of Krause's trial

**Memorandum Decision and Order - 18**

testimony and the equivocal nature of his identification of Santana, the differences

between his testimony and his pretrial statement were not significant.

Finally, Santana has not shown either unreasonable performance or prejudice in

relation to his claim that counsel erred in failing to introduce evidence of Krause's

hostility to the defense.  Lead trial counsel testified at the evidentiary hearing in state

court that Krause was volatile.  *State's Lodging C-2*, p. 121.  Though Krause was a

necessary witness to support the defense theory that two individuals were in the white

van, and that someone other than Santana could have been the shooter, counsel decided to

proceed very cautiously with him.  *State's Lodging C-2*, p. 128.  Counsel's decision not to

inject Krause's negative attitude into the case was the result of sound trial tactics, which

will not be second-guessed.  *See Strickland*, 466 U.S. at 690-91.

D.    Conclusion

The State's case rested upon the victim's dying declaration that Santana shot him

and Caloca's consistent eyewitness testimony leading up to the fatal gunshot.  In light of

this strong evidence, and considering the relatively minor impeachment and cross-

examination material that was omitted, this Court concludes that the Idaho Court of

Appeals's decision was neither contrary to nor an unreasonable application of clearly

established federal law.  Accordingly, there are no genuine issues of material fact, and

Respondent is entitled to judgment as a matter of law on Santana's remaining allegations

of ineffective assistance of counsel.

**Memorandum Decision and Order - 19**

## IV.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for Summary Judgment (Docket No. 20) is GRANTED.  Claims II (b), III (a), and III (d) are DISMISSED with prejudice.  Claim III (c) (4)-(6) is DENIED.

IT IS FURTHER ORDERED that this case is DISMISSED.



DATED:  **July 12, 2005**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge